AUSA: Lisa Daniels

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.

STIVEN LOPEZ,

Defendant.

**26 MAG 1936**
26 MAG

**COMPLAINT**

Violations of 18 U.S.C. §§ 922(a)(1)(A), 924(c)(1)(A)(i), and 2, and 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 841(b)(1)(B), and 841(b)(1)(C)

COUNTY OF OFFENSE:
BRONX

SOUTHERN DISTRICT OF NEW YORK, ss.:

Juan Rodriguez, being duly sworn, deposes and says that he is a Detective with the New York City Police Department ("NYPD"), and charges as follows:

### COUNT ONE
### (Unlicensed Firearms Dealing)

1.     From at least on or about October 16, 2025, through at least April 22, 2026, in the Southern District of New York and elsewhere, STIVEN LOPEZ, the defendant, not being a licensed importer, licensed manufacturer, or licensed dealer of firearms within the meaning of Chapter 44, Title 18, United States Code, willfully and knowingly engaged in the business of dealing in firearms, and in the course of such business shipped, transported, and received a firearm in interstate and foreign commerce, and aided and abetted the same, to wit, LOPEZ illegally sold firearms in the Bronx, New York.

(Title 18, United States Code, Sections 922(a)(1)(A) and 2.)

### COUNT TWO
### (Distribution of a Controlled Substance)

2.     On or about November 6, 2025, in the Southern District of New York and elsewhere, STIVEN LOPEZ, the defendant, knowingly and intentionally distributed and possessed with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

3.     The controlled substance involved in the offense was a quantity of a mixture and substance containing a detectable amount of cocaine, in violation of Title 21, United States Code, Section 841(b)(1)(C).

(Title 21, United States Code, Sections 812, 841(a)(1), 841(b)(1)(C).)

## COUNT THREE
### (Firearms Use, Carrying, and Possession)

4.      On or about November 6, 2025, in the Southern District of New York and elsewhere, STIVEN LOPEZ, the defendant, during and in relation to a drug trafficking crime for which he may be prosecuted in a court of the United States, namely, the drug trafficking crime charged in Count Two of this Complaint, knowingly used and carried a firearm, and in furtherance of such crime, possessed a firearm.

(Title 18, United States Code, Section 924(c)(1)(A)(i).)

## COUNT FOUR
### (Distribution of Controlled Substances)

5.      On or about November 10, 2025, in the Southern District of New York and elsewhere, STIVEN LOPEZ, the defendant, knowingly and intentionally distributed and possessed with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

6.      The controlled substances involved in the offense were a quantity of mixtures and substances containing a detectable amount of (i) heroin, (ii) fentanyl, (iii) para-fluorofentanyl, and (iv) cocaine, in violation of Title 21, United States Code, Section 841(b)(1)(C).

(Title 21, United States Code, Sections 812, 841(a)(1) and 841(b)(1)(C).)

## COUNT FIVE
### (Firearms Use, Carrying, and Possession)

7.      On or about November 10, 2025, in the Southern District of New York and elsewhere, STIVEN LOPEZ, the defendant, during and in relation to a drug trafficking crime for which he may be prosecuted in a court of the United States, namely, the drug trafficking crime charged in Count Four of this Complaint, knowingly used and carried a firearm, and in furtherance of such crime, possessed a firearm.

(Title 18, United States Code, Section 924(c)(1)(A)(i).)

## COUNT SIX
### (Distribution of a Controlled Substance)

8.      On or about November 19, 2025, in the Southern District of New York and elsewhere, STIVEN LOPEZ, the defendant, knowingly and intentionally distributed and possessed with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

9.      The controlled substance involved in the offense was a quantity of a mixture and substance containing a detectable amount of cocaine, in violation of Title 21, United States Code, Section 841(b)(1)(C).

2

(Title 21, United States Code, Sections 812, 841(a)(1) and 841(b)(1)(C).)

### COUNT SEVEN
### (Firearms Use, Carrying, and Possession)

10.    On or about November 19, 2025, in the Southern District of New York and elsewhere, STIVEN LOPEZ, the defendant, during and in relation to a drug trafficking crime for which he may be prosecuted in a court of the United States, namely, the drug trafficking crime charged in Count Six of this Complaint, knowingly used and carried a firearm, and in furtherance of such crime, possessed a firearm.

(Title 18, United States Code, Section 924(c)(1)(A)(i).)

### COUNT EIGHT
### (Distribution of a Controlled Substance)

11.    On or about December 1, 2025, in the Southern District of New York and elsewhere, STIVEN LOPEZ, the defendant, knowingly and intentionally distributed and possessed with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

12.    The controlled substance involved in the offense was 100 grams and more of a mixture and substance containing a detectable amount of heroin, in violation of Title 21, United States Code, Section 841(b)(1)(B).

(Title 21, United States Code, Sections 812, 841(a)(1) and 841(b)(1)(B).)

### COUNT NINE
### (Firearms Use, Carrying, and Possession)

13.    On or about December 1, 2025, in the Southern District of New York and elsewhere, STIVEN LOPEZ, the defendant, during and in relation to a drug trafficking crime for which he may be prosecuted in a court of the United States, namely, the drug trafficking crime charged in Count Eight of this Complaint, knowingly used and carried a firearm, and in furtherance of such crime, possessed a firearm.

(Title 18, United States Code, Section 924(c)(1)(A)(i).)

### COUNT TEN
### (Distribution of Controlled Substances)

14.    On or about January 20, 2026, in the Southern District of New York and elsewhere, STIVEN LOPEZ, the defendant, knowingly and intentionally distributed and possessed with intent to distribute controlled substances, in violation of Title 21, United States Code, Section 841(a)(1).

15.    The controlled substances involved in the offense were (i) 400 grams and more of

3

a mixture and substance containing a detectable amount of fentanyl, and (ii) 100 grams and more of a mixture and substance containing a detectable amount of para-fluorofentanyl, in violation of Title 21, United States Code, Section 841(b)(1)(A); (iii) 100 grams and more of a mixture and substance containing a detectable amount of heroin, in violation of Title 21, United States Code, Section 841(b)(1)(B); and (iv) a quantity of a mixture and substance containing a detectable amount of cocaine, in violation of Title 21, United States Code, Section 841(b)(1)(C).

(Title 21, United States Code, Sections 812, 841(a)(1),
841(b)(1)(A), 841(b)(1)(B), and 841(b)(1)(C).)

## COUNT ELEVEN
**(Distribution of Controlled Substances)**

16.    On or about January 22, 2025, in the Southern District of New York and elsewhere, STIVEN LOPEZ, the defendant, knowingly and intentionally distributed and possessed with intent to distribute controlled substances, in violation of Title 21, United States Code, Section 841(a)(1).

17.    The controlled substances involved in the offense were (i) 400 grams and more of a mixture and substance containing a detectable amount of fentanyl, in violation of Title 21, United States Code, Section 841(b)(1)(A); and (ii) 100 grams and more of a mixture and substance containing a detectable amount of heroin, in violation of Title 21, United States Code, Section 841(b)(1)(B).

(Title 21, United States Code, Sections, 812, 841(a)(1),
841(b)(1)(A), and 841(b)(1)(B).)

## COUNT TWELVE
**(Firearms Use, Carrying, and Possession)**

18.    On or about January 22, 2026, in the Southern District of New York and elsewhere, STIVEN LOPEZ, the defendant, during and in relation to a drug trafficking crime for which he may be prosecuted in a court of the United States, namely, the drug trafficking crime charged in Count Eleven of this Complaint, knowingly used and carried a firearm, and in furtherance of such crime, possessed a firearm.

(Title 18, United States Code, Section 924(c)(1)(A)(i).)

## COUNT THIRTEEN
**(Distribution of Controlled Substances)**

19.    On or about February 10, 2026, in the Southern District of New York and elsewhere, STIVEN LOPEZ, the defendant, knowingly and intentionally distributed and possessed with intent to distribute controlled substances, in violation of Title 21, United States Code, Section 841(a)(1).

20.    The controlled substances involved in the offense were (i) 400 grams and more of a mixture and substance containing a detectable amount of fentanyl, and (ii) 100 grams and more

4

of a mixture and substance containing a detectable amount of para-fluorofentanyl, in violation of Title 21, United States Code, Section 841(b)(1)(A); (iii) 100 grams and more of a mixture and substance containing a detectable amount of heroin, in violation of Title 21, United States Code, Section 841(b)(1)(B).

(Title 21, United States Code, Sections 812, 841(a)(1),
841(b)(1)(A), and 841(b)(1)(B).)

## COUNT FOURTEEN
### (Distribution of Controlled Substances)

21.    On or about February 25, 2026, in the Southern District of New York and elsewhere, STIVEN LOPEZ, the defendant, knowingly and intentionally distributed and possessed with intent to distribute controlled substances, in violation of Title 21, United States Code, Section 841(a)(1).

22.    The controlled substances involved in the offense were (i) 400 grams and more of a mixture and substance containing a detectable amount of fentanyl, in violation of Title 21, United States Code, Section 841(b)(1)(A); and (ii) 100 grams and more of a mixture and substance containing a detectable amount of heroin, in violation of Title 21, United States Code, Section 841(b)(1)(B).

(Title 21, United States Code, Sections 812, 841(a)(1),
841(b)(1)(A), and 841(b)(1)(B).)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

23.    I am a Detective with the New York City Police Department, Firearms Investigation Unit, and a Task Force Officer with the Drug Enforcement Administration ("DEA") Firearms Task Force. I have been personally involved in the investigation of this matter. This affidavit is based upon my personal participation in the investigation of this matter, my conversations with law enforcement agents, witnesses, and others, as well as my examination of reports, records, audio recordings, and video footage. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

### Overview

Based on my training and experience, my participation in this investigation, including my personal observations, my conversations with undercover law enforcement agents ("UC-1" and "UC-2," collectively, the "UCs"), my review of materials provided by UC-1 and UC-2, including screenshots and recordings of communications between STIVEN LOPEZ and the UCs, my conversations with other law enforcement agents, and my review of law enforcement reports and records, I have learned the following, among other things, that since at least in or about October 2025, law enforcement agents have been investigating an individual, STIVEN LOPEZ, the

defendant, engaged in unlicensed firearms dealing and distribution of controlled substances in the Bronx, New York.  From on or about October 16, 2025, through on or about April 22, 2026, in a series of approximately sixteen controlled transactions (or "UC Buys") between LOPEZ and the UCs, all of which were audio and video recorded by covert recording devices,[1] LOPEZ sold the UCs a total of 16 firearms, ammunition, and over 3.3 kilograms of fentanyl and heroin, as well as quantities of cocaine, and heroin, fentanyl, and para-fluorofentanyl.  As described further below, LOPEZ sold to the UCs: (1) firearms alone on seven occasions, (2) controlled substances alone on four occasions, and (3) firearms and controlled substances together on five occasions.

<u>The Firearms and Controlled Substances Sales</u>

24.    Based on my participation in this investigation, including my personal observations, my conversations with the UCs, my review of materials provided by the UCs, including screenshots and recordings of the communications between the UCs and <u>STIVEN LOPEZ, the defendant,</u>, my review of audio and video recordings of UC Buys, my conversations with other law enforcement agents, and my review of law enforcement reports and records, including reports from the New York City Police Department Laboratory, Controlled Substance Analysis Section ("NYPD Laboratory"), and the DEA Laboratory, I have learned the following, among other things:

a.    On or before October 16, 2025, UC-1 communicated with an individual whom UC-1 knew as "Flaco," using an encrypted messaging service, WhatsApp. UC-1 contacted "Flaco" on a number ending in -6047 (the "-6047 Number") and arranged a firearms transaction. As described further below, "Flaco" was subsequently identified as STIVEN LOPEZ, the defendant. On or about October 16, 2025, UC-1 drove to the agreed upon location—a particular street in the Bronx (the "Bronx Block")—and called LOPEZ to inform him that UC-1 had arrived. Shortly thereafter, LOPEZ got into UC-1's car and handed UC-1 a Springfield Armory 9mm semi-automatic pistol and magazine in exchange for $1,500 in U.S. currency.  LOPEZ then got out of UC-1's car.

b.    On or before October 27, 2025, LOPEZ and UC-1 communicated over WhatsApp regarding a firearms transaction.  On or about October 27, 2025, UC-1 drove to the Bronx Block, the agreed upon location for the transaction, and called LOPEZ on the -6047 Number to inform him that UC-1 had arrived. Shortly thereafter, LOPEZ and two other individuals ("CC-1" and "CC-2") arrived. LOPEZ got into UC-1's car while CC-1 and CC-2 remained outside. CC-1 then handed LOPEZ a firearm through the front passenger window, which LOPEZ then in turn handed to UC-1 in exchange for $1,500. The firearm was a Steyr Mannlicher 9mm semi-automatic pistol. LOPEZ also provided UC-1 with a magazine loaded with 14 rounds of 9mm ammunition. LOPEZ then left UC-1's car.

c.    On or before November 4, 2025, LOPEZ communicated with UC-1 over WhatsApp to arrange a firearms transaction. On or about November 4, 2025, UC-1 drove to the agreed upon location in the Bronx, New York, and called LOPEZ on the -6047 Number to inform him that UC-1 had arrived. Shortly thereafter, LOPEZ and CC-1 arrived and got into UC-1's car.

---

[1] LOPEZ communicated with UC-1 and UC-2 in Spanish.  I am a Spanish speaker and have reviewed the recordings of such in-person and phone communications between LOPEZ and the UCs.

CC-1 handed UC-1 a Glock semiautomatic pistol and a magazine loaded with 14 rounds of 9mm ammunition. In exchange, UC-1 handed LOPEZ $1,500. LOPEZ and CC-1 then left UC-1's car.

d. On or before November 6, 2025, LOPEZ and UC-1 communicated over WhatsApp regarding a firearms and controlled substances transaction. On or about November 6, 2025, UC-1 drove to the Bronx Block, the agreed upon location, and called LOPEZ on the -6047 Number to inform him that UC-1 had arrived. Shortly thereafter, LOPEZ arrived and got into UC-1's car. LOPEZ handed UC-1 one Walther-USA .22 caliber semi-automatic pistol, a magazine loaded with four rounds of .22 caliber ammunition, and a black plastic bag suspected to contain 30 grams of cocaine, all in exchange for $2,150. The suspected controlled substance was later tested by the NYPD Laboratory and confirmed to contain cocaine and weighed 19.519 grams.

e. On or before November 10, 2025, LOPEZ and UC-1 communicated over WhatsApp regarding a firearms and controlled substances transaction. On or about November 10, 2025, UC-1 drove to the Bronx Block, the agreed upon location, and called LOPEZ on the -6047 Number to inform him that UC-1 had arrived. Shortly thereafter, LOPEZ arrived and got into UC-1's car. LOPEZ handed UC-1 one Taurus 9mm semi-automatic pistol, a magazine loaded with four rounds of 9mm ammunition, a clear plastic bag suspected to contain 150 grams of cocaine, and two white glassine envelopes containing suspected fentanyl, all in exchange for $3,500. The suspected controlled substances were later tested by the NYPD Laboratory and confirmed to contain (i) cocaine, which weighed 149.80 grams, and (ii) heroin, para-fluorofentanyl, and fentanyl, which weighed 0.159 grams.

f. On or before November 18, 2025, LOPEZ and UC-1 communicated over WhatsApp regarding a controlled substances transaction. On or about November 18, 2025, UC-1 drove to the Bronx Block, the agreed upon location, and called LOPEZ on the -6047 Number to inform him that UC-1 had arrived. Shortly thereafter, LOPEZ arrived and got into UC-1's car. LOPEZ handed UC-1 a clear plastic bag suspected to contain 60 grams of fentanyl in exchange for $1,300. The suspected controlled substance was later tested by the DEA Laboratory and confirmed to contain cocaine and weighed 99.5 grams. During the transaction, UC-1 also handed LOPEZ $1,000 for a portion of the suspected cocaine that LOPEZ provided to UC-1 on consignment on or about November 10, 2025.

g. On or before November 19, 2025, LOPEZ and UC-1 communicated over WhatsApp regarding a firearms and controlled substances transaction. On or about November 19, 2025, UC-1 drove to the Bronx Block, the agreed upon location, and called LOPEZ on the -6047 Number to inform him that UC-1 had arrived. Shortly thereafter, LOPEZ arrived and got into UC-1's car. LOPEZ handed UC-1 one SIGARMS 9mm semi-automatic pistol, a magazine loaded with one round of 9mm ammunition, and a clear plastic bag suspected to contain 120 grams of fentanyl, all in exchange for $4,100. The suspected controlled substance was later tested by the DEA Laboratory and confirmed to contain cocaine and weighed 48.8 grams.

h. On or before November 24, 2025, LOPEZ communicated with UC-1 over WhatsApp to arrange a firearms transaction. On or about November 4, 2025, UC-1 drove to the Bronx Block, the agreed upon location for the transaction, and called LOPEZ on the -6047 Number to inform him that UC-1 had arrived. Shortly thereafter, LOPEZ arrived and got into UC-1's car. LOPEZ handed UC-1 three firearms—one Taurus revolver, one Glock .38 caliber semi-automatic

7

pistol, and one Smith & Wesson semi-automatic pistol—in exchange for $4,500. LOPEZ then left UC-1's car.

i.    On or before December 1, 2025, LOPEZ and UC-1 communicated over WhatsApp regarding a firearms and controlled substances transaction. On or about December 1, 2025, UC-1 drove to the Bronx Block, the agreed upon location, and called LOPEZ on the -6047 Number to inform him that UC-1 had arrived. Shortly thereafter, LOPEZ arrived and got into UC-1's car. LOPEZ handed UC-1 one Ruger .22 caliber semi-automatic pistol with two magazines, one Taurus .40 caliber semi-automatic pistol with two magazines, and one clear plastic bag suspected to contain 500 grams of fentanyl, all in exchange for $7,000. The suspected controlled substance was later tested by the NYPD Laboratory and confirmed to contain heroin and weighed 395.42 grams.

a.    On or before January 20, 2026, LOPEZ and UC-1 communicated over WhatsApp regarding a controlled substances transaction. On or about January 20, 2026, UC-1 drove to the Bronx Block, the agreed upon location, and called LOPEZ on the -6047 Number to inform him that UC-1 had arrived. Shortly thereafter, LOPEZ arrived and got into UC-1's car. LOPEZ handed UC-1 a clear plastic bag suspected to contain 400 grams of fentanyl and one clear plastic bag suspected to contain 30 grams of cocaine, all in exchange for $8,000. The suspected controlled substances were later tested by the DEA Laboratory and confirmed to contain (i) fentanyl, heroin, and para-fluorofentanyl, and weighed 404.052 grams, and (ii) cocaine and weighed 29.7 grams.

j.    On or about January 22, 2026, LOPEZ and UC-1 communicated over WhatsApp regarding a firearms and controlled substances transaction. On or about January 22, 2026, UC-1 drove to the Bronx Block, the agreed upon location, and called LOPEZ on the -6047 Number to inform him that UC-1 had arrived. Shortly thereafter, LOPEZ arrived and got into UC-1's car. LOPEZ handed UC-1 one Taurus .38 caliber revolver in exchange for $1,500, and one clear plastic bag suspected to contain 1 kilogram of fentanyl on consignment. The suspected controlled substance was later tested by the DEA Laboratory and confirmed to contain fentanyl and heroin and weighed 995.1 grams.

k.    On or about February 4, 2026, LOPEZ and UC-1 arranged to meet for UC-1 to provide LOPEZ with payment for controlled substances that LOPEZ had sold to UC-1 on consignment on or about January 22, 2026, as described further in the preceding paragraph. UC-1 drove to the agreed upon location with UC-2 where they met LOPEZ. UC-1 introduced UC-2 to LOPEZ and provided $5,000 to LOPEZ. The UCs then left. Thereafter, UC-2 and LOPEZ communicated over WhatsApp regarding firearms and controlled substances transactions, and met at locations in the Bronx, New York to conduct those transactions as described further below.

l.    On or before February 10, 2026, LOPEZ and UC-1 communicated over WhatsApp regarding a controlled substances transaction. On or about February 10, 2026, UC-1 drove to the Bronx Block, the agreed upon location, and met LOPEZ. LOPEZ got into UC-1's car and handed UC-1 a clear Ziploc bag suspected to contain 1 kilogram of fentanyl. UC-1 handed LOPEZ $10,000, part of which was payment for the suspected kilogram of fentanyl provided that day, and part of which was payment for the controlled substances provided on consignment on or about January 22, 2026. The suspected controlled substance was later tested by the DEA Laboratory and confirmed to contain fentanyl and para-fluorofentanyl and weighed 996.8 grams.

8

m.    On or before February 25, 2026, UC-2 communicated with LOPEZ on the -6407 Number over WhatsApp regarding a controlled substances transaction. On or about February 25, 2026, UC-2 drove to the Bronx Block, the agreed upon location, and met LOPEZ. LOPEZ got in UC-2's car and handed UC-2 a black bag suspected to contain 1 kilogram of fentanyl on consignment. The suspected controlled substance was later tested by the DEA Laboratory and confirmed to contain heroin and fentanyl and weighed 991.2 grams. During the transaction, UC-2 also handed LOPEZ $5,000 for a portion of suspected controlled substances that LOPEZ had sold to UC-1 on consignment on or about February 10, 2026.

n.    On or before March 24, 2026, LOPEZ communicated with UC-2 on the -6047 Number over WhatsApp to arrange a firearms transaction. On or about March 24, 2026, UC-2 drove to the Bronx Block, the agreed upon location, where UC-2 met LOPEZ. LOPEZ got in UC-2's car and handed UC-2 a Smith & Wesson 9mm semi-automatic pistol in exchange for $1,500.

o.    On or before April 15, 2026, LOPEZ communicated with UC-2 on the -6047 Number to arrange a firearms transaction. On or about April 15, 2026, UC-2 drove to the Bronx Block, the agreed upon location, where UC-2 met LOPEZ. LOPEZ got in UC-2's car and handed UC-2 two firearms—a Smith & Wesson .40 caliber semi-automatic pistol and a Ruger .380 caliber pistol—in exchange for $3,000.

p.    On or before April 22, 2026, LOPEZ communicated with UC-2 on the -6047 Number over WhatsApp to arrange a firearms transaction. On or about April 22, 2026, UC-2 drove to the Bronx Block, the agreed upon location, where UC-2 met LOPEZ. LOPEZ got in UC-2's car and handed UC-2 two firearms—a Taurus 9mm semi-automatic pistol and a Taurus .40 caliber semi-automatic pistol in exchange for $3,000.

25.    Based on my review of publicly available records from the Bureau of Alcohol, Tobacco, and Firearms and Explosives ("ATF"), I have learned that from at least October 2025 through the present, STIVEN LOPEZ, the defendant, was not a licensed importer, licensed manufacturer, or licensed dealer of firearms within the meaning of Chapter 44, Title 18, United States Code.

### Arrest on May 19, 2026, and Identification of "Flaco" as STIVEN LOPEZ

26.    Based on my participation in this investigation, including my personal observations, my conversations with UC-1, my review of materials provided by UC-1, including screenshots and recordings of the communications between the UC-1 and STIVEN LOPEZ, the defendant, my review of recordings of UC Buys, and my conversations with other law enforcement agents, I have learned the following, among other things:

a.    On or about May 11, 2026, LOPEZ and UC-1 communicated regarding a controlled substances and firearms transaction. In particular, LOPEZ informed UC-1 in substance and in part that he had been arrested days prior and was facing charges carrying seven to seventeen years' imprisonment. LOPEZ told UC-1 "I'm not going to do that" and stated that he was going to "head down," which UC-1 understood meant that LOPEZ intended to flee to the Dominican Republic. LOPEZ confirmed that UC-1 understood what LOPEZ intended to convey, stating "You

9

know where?" UC-1 responded that UC-1 did know. LOPEZ then proposed that LOPEZ continue dealing firearms and controlled substances from the Dominican Republic with UC-1, explaining that LOPEZ would leave UC-1 with "everything connected here," so UC-1 could "give us work over there."

b.      Subsequently, LOPEZ and UC-1 continued to communicate regarding a firearms and controlled substances transaction that LOPEZ previously had indicated would provide him with money to flee. In particular, LOPEZ and UC-1 discussed a transaction involving the sale of three firearms and three kilograms of fentanyl to UC-1. LOPEZ and UC-1 arranged to meet in the Bronx, New York, on or about May 19, 2026, to conduct the transaction.

c.      On or about May 19, 2026, UC-1 drove to the agreed upon location in the Bronx for the transaction. Law enforcement then observed the individual known to the UCs as "Flaco," and who conducted the firearms and controlled substances transactions described above, approach UC-1's car.[2] Law enforcement arrested "Flaco," who subsequently identified himself as "Stiven Lopez." Law enforcement confirmed his identity through fingerprint processing in a law enforcement database.

WHEREFORE, I respectfully request that STIVEN LOPEZ, the defendant, be imprisoned or bailed, as the case may be.

Detective Juan Rodriguez
New York City Police Department

Sworn to me through the transmission of this
Complaint by reliable electronic means, pursuant to
Federal Rules of Criminal Procedure 4.1 and 41(d)(3), this
_____ day of May, 2026

THE HONORABLE ROBERT W. LEHRBURGER
United States Magistrate Judge
Southern District of New York

---

[2] At the time of arrest, LOPEZ was not in possession of firearms or controlled substances. Based on my participation in this investigation, I have learned among other things, that on at least one prior occasion, LOPEZ met with one of the UCs for a planned transaction to first confirm that the UC had the money before LOPEZ then brought the firearms and/or controlled substances to the UC.

10